IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Tracy A. Palmer,<br><br>                    Plaintiff,<br><br>        vs.<br><br>Centerra Group, LLC; Steve Healy; Charles Shoup; and Joshua Herring,<br><br>                    Defendants. | Civil Action No. 1:20-cv-2120-CMC<br><br>**ORDER** |

Through this action, Plaintiff Tracy A. Palmer ("Plaintiff") seeks recovery from Defendants Centerra Group, LLC; Steve Healy; Charles Shoup; and Joshua Herring, (collectively, "Defendants") for alleged violations of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq* ("FMLA"), the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* ("FLSA"), and state law claims for defamation and outrage. The matter is before the court on Defendants' motion for summary judgment. ECF No. 34. Plaintiff filed a response and additional attachments. ECF Nos. 42, 46. Defendants replied. ECF No. 51.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B), DSC, this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pre-trial proceedings and a Report and Recommendation ("Report"). On January 27, 2022, the Magistrate Judge issued a Report recommending Defendants' motion be granted. ECF No. 57. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections to the Report, and Defendants filed limited objections to the Report's alternative recommendation. ECF Nos. 61, 62. Both parties filed replies. ECF Nos. 71, 73.

1. **Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court reviews the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

2. **Factual Background**[1]

Plaintiff began his employment with Defendant Centerra in October 1999 as a Security Police Officer II ("SPO II") at the Savannah River Site ("SRS")[2] where Centerra provides security pursuant to a contract with the United States Department of Energy ("DOE"). This position required Plaintiff to obtain a DOE Q security clearance and certification in its Human Reliability

---

[1] The facts are taken in the light most favorable to the non-moving party, Plaintiff.

[2] SRS provides radioactive materials for the maintenance of the United States' nuclear stockpile. Today, SRS manages and maintains nuclear materials left from the Cold War.

2

Program ("HRP"), a safety program designed to ensure employees with access to nuclear materials meet the highest standards of reliability and physical and mental suitability via "continuous evaluation." 10 C.F.R. § 712.1. Plaintiff qualified for both at hire and maintained them without issue until August of 2017.

In August of 2017, two events occurred essentially simultaneously. One, Plaintiff requested intermittent FMLA leave to care for his wife, who suffered a traumatic brain injury and required full-time care beginning that August. ECF No. 46-7, Pl. dep. 21. Shortly after he submitted this request, and was absent from work, the Union at SRS went on strike. *Id.* at 31; ECF No. 46-9 (Healy dep. 37). On August 23, 2017, Defendant Healy, Centerra's Human Resources Manager, called Plaintiff at home, directing him to return to work immediately or turn in his badge because "the assumption was he was on strike." Healy dep. 39-41. Plaintiff and Healy discussed Plaintiff's FMLA leave over the next two days, with Healy at one point indicating he had no proof Plaintiff was on FMLA leave and considered him on strike, which required him to turn in his badge and his benefits would be terminated. *Id.* at 40-41, 46-47. Plaintiff informed Healy he had hired an attorney, at which point Healy instructed Plaintiff to fax him documentation showing use of FMLA leave via specific fax number to the records office in Workforce Services Division. *Id.* at 49, 51. Plaintiff was not advised this was an unsecure fax line, and faxed the requested documentation to the number Healy provided. This included a handwritten cover letter and two post rotation sheets designating Plaintiff as out on FMLA leave. Ultimately, Centerra permitted Plaintiff to use FMLA leave from August 15, 2017, to October 8, 2017. *Id.* at Ex. 1.

3

After Plaintiff returned from FMLA leave, he received a number of disciplinary actions.[3] On October 20, 2017, he received a security infraction for sending the post rotations showing his FMLA leave to Healy on an unsecure fax machine. ECF No. 46-10 (Healy dep. Ex. 4). Days later, on October 23, 2017, Plaintiff was temporarily removed from HRP for social media statements made while he was out on FMLA leave. ECF No. 46-3. On November 13, 2017, Plaintiff was disciplined for failing to identify an uncleared individual entering a secure area. ECF No. 46-7. Although there is no record of a written warning or notice of discipline, this action appears in an HRP Supervisory Review conducted on November 16, which was submitted to the DOE on November 20, 2017. *Id.* Plaintiff denies this incident occurred or that he received any discipline for it. ECF No. 46-7, Pl. dep. at 72-73, 167. On November 14, 2017, Plaintiff was disciplined for damaging the trim of a government vehicle when he slipped trying to enter the vehicle, causing the plastic trim to become almost entirely dislodged. ECF No. 46-11 at 23-35 (Healy dep. at Ex. 7). The trim caught on the pavement when the driver attempted to back up, causing it to catch on the pavement and bend out to the side. Plaintiff removed the trim so the group could proceed to the gun range for weapons qualifications. The driver reported the damage to Centerra. Although Plaintiff maintains this was an accident, Centerra believed the damage was intentional and issued a disciplinary action to Plaintiff. *Id.*

---

[3] Prior to August 2017, he had received only one disciplinary action since he began the position in 1999.

On January 25, 2018, Dr. Daniels, DOE psychologist, performed a supplemental psychological evaluation of Plaintiff and recommended he remain temporarily removed from HRP duties. On May 1, 2018, Plaintiff underwent an additional supplemental psychological evaluation, after which Dr. Daniels recommended Plaintiff be returned to HRP duties.

Plaintiff was disciplined for failure to report for scheduled training on June 19, 2018. Although Plaintiff testified at a DOE hearing he never received notice of the training (ECF No. 46-7, Pl. dep 167-68), Defendant Shoup testified Plaintiff "admitted to getting the notification form and signing it, and then a couple of days later he changed his story and he said he never got notified." ECF No. 46-12, Shoup dep.at 45. It was stipulated at the DOE hearing Centerra did not have paperwork to indicate Plaintiff had been notified of the training. ECF No. 46-8, Pl. dep. Ex. 43.

There was a dispute about a post-shift meeting between Plaintiff and the DOE personnel security officer on July 25, 2018, concerning the disciplinary action for missing training on June 19, 2018. ECF No. 46-12, Shoup dep. at 48. Typically, when employees have post-shift meetings they are notified in advance and begin their shifts later to avoid overtime; however, Plaintiff reported at the beginning of his shift and stayed on the clock through his DOE meeting.[4] ECF No. 46-7, Pl. dep at 141. This resulted in Plaintiff working approximately 16 hours that day, and he therefore was entitled to a meal allowance of $10 under the Union's Collective Bargaining Agreement. ECF No. 46-5, Hughes aff. ¶¶ 7, 10. Defendant Shoup testified he manually adjusted

---

[4] The parties dispute whether he received advance notice of his appointment with the DOE.

5

Plaintiff's timesheet to reflect the time the DOE personnel security office reported Plaintiff leaving his appointment, "to make sure it was correct." ECF No. 46-12, Shoup dep. at 50. Shoup adjusted Plaintiff's clock out so that the time sheet reflected 14.9 hours worked (ECF No. 46-5, Hughes aff. ¶¶ 7-8) ; however, Shoup denied reducing Plaintiff's hours. ECF No. 46-12, Shoup dep. at 62. The next day, Plaintiff and Hughes met with Shoup, who "begrudgingly agreed" to correct Plaintiff's time sheet to pay him for all hours worked and the meal allowance. ECF No. 46-5, Hughes aff. ¶ 11. Shoup disputes Plaintiff was present at the meeting and maintains it only concerned the meal allowance. ECF No. 46-12, Shoup dep. at 59-60.

On October 6, 2018, Plaintiff was reported for "aberrant behavior" and temporarily removed from HRP after reporting sick to an overtime shift. ECF No. 46-12, Shoup dep. ex. 9. Plaintiff testified he realized he was beginning to feel ill after arriving at work and felt he could not safely work this shift, as he had already worked sixty-nine hours that week. ECF No. 46-7, Pl. dep. at 86, 94. As Plaintiff had arrived at work, he stopped by the lieutenants' station to notify them in person, and was notified his posting had been changed. Plaintiff also called the lieutenants' station from his car before leaving and informed Defendant Herring he was calling out sick, as the CBA required a phone call. Plaintiff denies leaving work because he did not like the changed rotation post. ECF No. 46-7, Pl. dep. at 86, 94, 102, 169-70. However, Defendants assert Plaintiff "did not appear ill" and was refusing to work "simply because he did not want to work the modified post rotation." ECF No. 46-12, Shoup dep. exs. 5-6. Defendant Herring testified Plaintiff did not claim he was sick until he called from the parking lot, and had complained about the shift

6

assignment during the conversation at the lieutenants' station.  ECF No. 46-13, Herring dep. at 60, 87.

Plaintiff received corrective counseling for his use of sick leave after a determination by "Senior Management, Union."  ECF No. 34-10, Pl. dep. ex 34; ECF No. 46-12, Shoup dep. ex. 5.  However, there were concerns by Jimmie Clark, DOE HRP Program Manager, regarding Plaintiff's reinstatement to HRP, who noted "[r]equests for reinstatement should not be based on Senior Management's decision regarding discipline," and asked Centerra's HRP Management Official, Alfred Ward, whether he believed Plaintiff was "suitable and reliable for HRP Certification." ECF No. 34-10, Pl. dep. ex. 34.  Ward responded that while supervision felt Plaintiff decided not to work that night because he didn't want the modified post rotation, that was determined not to be the case so no formal discipline was issued.  *Id.*  Clark then asked if Ward was requesting HRP reinstatement as the Centerra HRP MO, and inquired how the security concerns at the time of his removal had been mitigated.  In response, Ward indicated he would arrange for Plaintiff to be reevaluated by Dr. Daniels and that Shoup would have the opportunity to address his concerns with Dr. Daniels prior to the evaluation.  ECF No. 34-7.

Dr. Daniels conducted a supplemental psychological evaluation of Plaintiff on December 5, 2018.  ECF No. 46-14, Daniels dep. ex. 3.  Dr. Daniels spoke to Lt. Herring, Captain Sawyer, and Major Shoup at the request of Centerra Management for 30-45 minutes each regarding Plaintiff's performance, reliability, and the events of October 6, 2018. The evaluation stated these interviews "suggested an individual with questionable integrity and veracity; an individual who responds negatively when he does not 'get his way'; an individual who may not be emotionally

7

stable; an individual who is not reliable, does not make good decisions, and does not take responsibility for the consequences of his own behavior." *Id.* Regarding the events of October 6, 2018, Dr. Daniels reviewed statements from SPOI Freddie Johnson, Lt. Buchanan, and Lt. Herring, which all presented a "consistent account of the events in question, which differs substantially from [Plaintiff's] account." *Id.* He noted several life stressors in Plaintiff's life, such as relatives with serious health concerns and his wife's injury which required significant care. Plaintiff admitted to Dr. Daniels in previous evaluations he had been "unusually thoughtless since his wife's injury" and his "recent write-ups generally involved failure to follow policies and procedures," which was "not representative of his work behavior prior to 2016," when his wife was injured. *Id.* Some of these stressors, however, had "spontaneously ameliorated" and could not explain his recent issues at work. *Id.* Dr. Daniels concluded he could not, "in good conscience, recommend [Plaintiff] for reinstatement in the HRP at this time." *Id.*

On March 4, 2019, it was recommended to the DOE that Plaintiff's HRP certification be revoked. ECF No. 46-8 at 27, Pl. dep. ex. 38. In late May 2019, the DOE suspended Plaintiff's security clearance. *Id.* at 33, ex. 40. Plaintiff utilized the DOE's appeal procedures and appeared pro se before a DOE Administrative Judge for an evidentiary hearing on October 10, 2019, to challenge the suspension of his security clearance. ECF No. 46-4, DOE Hearing tr. The Administrative Judge issued a written decision on November 5, 2019, finding Plaintiff "brought forth sufficient evidence to resolve the security concerns set forth in the Notification Letter" and holding Plaintiff's DOE security clearance should be restored. ECF No. 46-8 at 41, Pl. dep. ex. 43. The Judge noted Dr. Daniels testified at the hearing that, based on new information he learned

8

at the hearing, he no longer believed Plaintiff displayed a lack of trustworthiness, reliability, or veracity. "Moreover, the DOE Psychologist expressed that he now doubted the veracity of the information provided to him by the [Centerra] personnel with whom he consulted concerning [Plaintiff's] conduct prior to issuing his second report." *Id.* at 45.

Dr. Daniels testified at deposition in this action he did not believe Shoup, Sawyer, or Herring shared false information with him intentionally. ECF No. 46-14, Daniels dep. at 89. He believed "they communicated to me the facts and the truth as they knew it and understood it at the time." *Id.*

### 3.  **The Instant Lawsuit**

Plaintiff has brought claims against Centerra, Healy, and Shoup for retaliation in violation of the FMLA; and against Centerra, Shoup, and Herring, for FLSA retaliation. ECF No. 1 at 11, 13. He alleges Defendants retaliated against him for taking FMLA leave and engaging in protected activity under the FLSA by

> threatening him to return to work "or else," claiming his leave was not approved when it was, and demanding evidence that he had submitted paperwork for FMLA when he had already done so; by disciplining him for sending documentation about his leave to the fax number that Defendant Healy specifically directed; by engaging in a continuous pattern of harassment and bullying; by reducing his hours and eliminating opportunities for overtime; by fraudulently reducing his hours on his timesheet; and by fabricating reasons to report Plaintiff to the DOE psychologist in an attempt to get Plaintiff's Department of Energy Access Authorization revoked.

*Id.* at ¶¶ 68, 78. He also alleges all Defendants defamed him by making false reports concerning his trustworthiness and reliability to the DOE, which caused his security clearance to be revoked, resulting in a demotion and reduction in hours. *Id.* at ¶¶ 85, 89. Finally, Plaintiff claims all

Defendants intentionally or recklessly inflicted severe emotional distress upon him through these actions. *Id.* at ¶ 94.

### 4. <u>Discussion</u>

The Magistrate Judge recommends granting summary judgment for myriad reasons. First, the Report finds Plaintiff's claims are barred by the waiver he signed at the outset of his employment, involving the disclosure of HRP records to DOE officials. ECF No. 57 at 12. The Report then determines addressing Plaintiff's claims would necessarily involve the propriety of revoking Plaintiff's security clearance, which is prohibited by *Dept' of the Navy v. Egan*, 484 U.S. 518 (1988). *Id.* at 16. The Report also addresses the merits of the FMLA and FLSA claims, finding the retaliation claims are not viable because the adverse employment actions (disciplinary actions against him and temporary removal of HRP) were not pretext for retaliation, and therefore summary judgment for Defendants is appropriate. *Id.* at 30. Finally, the Report recommends declining to exercise supplemental jurisdiction over the state law claims. *Id.*

Plaintiff objects to the Recommendations regarding waiver, *Egan*, and the merits of the FMLA and FLSA claims. ECF No. 64. He argues federal law precludes prospective waivers of claims under FLMA and FLSA, and therefore waiver cannot bar his claims. *Id.* at 1. He disagrees *Egan* bars his claims because he did not directly challenge the suspension of his security clearance. *Id.* at 3. Finally, Plaintiff contends summary judgment should not be granted as to the FMLA and FLSA claims because a causal connection exists between the adverse employment actions and the protected activity, and Defendants' proffered reasons for the adverse actions were pretextual. *Id.* at 7-8.

10

Defendants filed limited objections to the recommendation the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims if summary judgment is granted on the federal claims. ECF No. 61. They argue Plaintiff's claims for defamation and intentional infliction of emotional distress are barred by waiver, *Egan*, and on the merits, and the court should grant summary judgment on the state law claims instead of declining to exercise supplemental jurisdiction over them and dismissing them without prejudice.

Defendants also filed a reply to Plaintiff's objections, arguing the Magistrate Judge properly found the HRP waiver precluded Plaintiff's claims based on communications made to the DOE. ECF No. 71 at 1. They also contend *Egan* bars Plaintiff's claims because they concern him being removed from HRP and his damages are related to those actions. Finally, they argue the Magistrate Judge's recommendation of summary judgment on the merits was proper because Plaintiff failed to show a genuine issue of material fact as to pretext. *Id.* at 5.

Plaintiff filed a response to Defendant's partial objections, arguing if the federal claims are dismissed, the court should decline to exercise supplemental jurisdiction over the state claims, and they should be dismissed without prejudice. ECF No. 73 at 2.

       *a. Waiver*

The Magistrate Judge found Plaintiff's claims barred by a waiver signed by Plaintiff stating his rights under any applicable federal statute are waived where a claim involves the disclosure of HRP records to DOE officials. ECF No. 57 at 12. The Report determined Plaintiff "waived any rights to bring an action with respect to the disclosure of his HRP records to 'Corporation management or DOE officials without a legitimate need for the records in the performance of their

11

responsibilities in the HRP review and certification process." *Id.* at 14 (citing 5 U.S.C. §522a(e)(10)). Because "any other applicable federal or state statutes" includes causes of actions under FMLA or FLSA, the Report concluded, and there are no exceptions found in the plain language of the waiver, Plaintiff's claims are barred as the information disclosure that would be required to pursue them is not a "legitimate need." *Id.* at 15-16.

Plaintiff objects, arguing employees cannot waive prospective claims under the FMLA or FLSA. ECF No. 64 at 2. He cites FMLA regulations stating, "Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA." *Id.* (citing 29 C.F.R. § 825.220(d)). Under the FLSA, the Supreme Court has ruled an employee's "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 740 (1981).

Defendants replied, noting that although Plaintiff did not waive his FMLA and FLSA claims and could bring litigation under those laws, he "simply cannot premise" such claims on the sharing of information between Defendants and the DOE if the information is related to Plaintiff's HRP status, because the waiver bars litigation based on disclosure of such information. ECF No. 71 at 1-2. Because the information reported by Defendants to the DOE fell within one of the categories in the regulations setting forth behavior that must be reported, 10 C.F.R. § 712.13, they argue summary judgment is appropriate on all claims. *Id.* at 2.

The waiver at issue states Plaintiff recognizes medical and non-medical records generated and relevant to his eligibility to occupy an HRP position are protected by the Privacy Act of 1974,

12

but he agrees for them to be disclosed to the DOE contractor or DOE officials who have a "legitimate need for the records in the performance of their duties and responsibilities in the HRP review and approval process." ECF No. 46-7 at 130, Pl. dep. ex. 13. He also agrees the document signed serves as written consent for such a disclosure to Corporation management or DOE officials, and

> [f]urther waive[s] any rights and release the Corporation, DOE, and any individuals employed by the corporation or DOE, including DOE contractor medical department personnel, from liability under the Privacy Act, 5 USC § 552a, the U.S. or state constitutions, any other applicable federal or state statutes, any applicable physician-patient privilege, and common law claims of any nature whatsoever, *for disclosure* of my HRP records to Corporation management or DOE officials with a legitimate need for the records in the performance of their responsibilities in the HRP review and certification process.

*Id.* (emphasis added).

Plaintiff waived claims against the DOE or Corporation employees *for disclosure* of HRP records "to Corporation management or DOE officials with a legitimate need for the records in the performance of their responsibilities in the HRP review and certification process." ECF No. 46-7 at 130, Pl. dep. ex. 13. Plaintiff does not raise a Privacy Act or other federal or state claim based on release of medical or non-medical records relevant to his eligibility to occupy an HRP position. Rather, he alleges false information was disclosed by Centerra to the DOE in retaliation for his exercise of FMLA and FLSA rights.

Second, settled law precludes employers from requiring employees to waive prospective FMLA or FLSA rights. 29 C.F.R. § 825.220(d) (2013) ("Employees cannot waive, nor may employers induce employees to waive, their prospective rights under FMLA. For example,

employees cannot trade off the right to take FMLA leave against some other benefit offered by the employer"); *Barrentine v. Ark.-Best Freight Sys.,* 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."). The waiver, therefore, cannot be enforced to bar Plaintiff's FMLA or FLSA claims. Accordingly, the court declines to adopt the Report on the issue of waiver.

        *b. Security Clearance*

         i. Federal Claims

The Magistrate Judge also recommends dismissal because evaluating Plaintiff's FMLA and FLSA claims would necessarily require review of the propriety of revoking Plaintiff's HRP certification, which is prohibited by *Egan*. In *Egan*, a Navy civilian employee challenged his dismissal for failure to maintain his security clearance. The Supreme Court held courts should not intrude upon an agency's determination on security clearance "unless Congress specifically has provided otherwise" because "the protection of classified information must be committed to the broad discretion of the agency responsible." *Id.* at 529-30. Because the Magistrate Judge concluded the court's decision on Plaintiff's claims would require review of the alleged retaliatory reports from Defendants to the DOE that formed the basis of the eventual revocation, the Report found this action to be a non-justiciable challenge. ECF No. 57 at 19.

Plaintiff objects, claiming the cases cited in the Report are distinguishable, as the claims here were brought against a private employer not directly responsible for the security clearance decision and do not directly challenge the Executive Branch's security clearance determination.

14

ECF No. 64 at 4.  He contends the actions of which he complains can be reviewed independent of the HRP and security clearance processes undertaken by the DOE. *Id.* at 7.  Defendants disagree, as they contend Plaintiff's lawsuit is premised on his being removed from HRP, and no review of such claims can occur without reviewing the DOE's decision to suspend Plaintiff's HRP clearance. ECF No. 71 at 3.  Therefore, they argue Plaintiff's claims are barred by *Egan*.

The court agrees. Plaintiff alleges the following as retaliatory actions taken by Centerra and the individual Defendants:

> threatening him to return to work "or else," claiming his leave was not approved when it was, and demanding evidence that he had submitted paperwork for FMLA when he had already done so; by disciplining him for sending documentation about his leave to the fax number that Defendant Healy specifically directed; by engaging in a continuous pattern of harassment and bullying; by reducing his hours and eliminating opportunities for overtime; by fraudulently reducing his hours on his timesheet; and by fabricating reasons to report Plaintiff to the DOE psychologist in an attempt to get Plaintiff's Department of Energy Access Authorization revoked.

ECF No. 1 at ¶¶ 68, 78.

Plaintiff was temporarily removed from HRP resulting in supplemental HRP evaluations, at least in part based on the conduct by Defendants of which Plaintiff complains. These actions by Centerra and its employees are inextricably bound up with the DOE's ultimate decision to suspend Plaintiff's security clearance.  For example, Plaintiff alleges one such retaliatory action was when Defendant Shoup fraudulently reduced hours on Plaintiff's timesheet after Plaintiff had a post-shift meeting with a DOE officer on July 25, 2018.  This  was reviewed by Dr. Daniels in the supplemental psychological evaluation on December 5, 2018, when it was recommended Plaintiff's security clearance remain temporarily suspended. Dr. Daniels also consulted with

15

Defendant Shoup during the final supplemental evaluation, after which the psychologist recommended Plaintiff's security clearance be revoked. Plaintiff further complains Defendant Shoup fabricated reasons why Plaintiff was unfit to Dr. Daniels "in an attempt to get Plaintiff's Department of Energy Access Authorization revoked." Therefore, the actions of Defendants cannot be separated from the DOE's inquiries and review of Plaintiff's status in the HRP.

In support of finding Plaintiff's claims non-justiciable, the Report cites *Reinbold v. Evans*, in which the plaintiff was removed from the job site and his security clearance suspended after concerns were raised about his judgment, reliability, and ability to protect classified information. 187 F.3d 348, 353 (4th Cir. 1999). Reinbold was evaluated by an NSA psychologist, who was provided false information by two other Government employees. The NSA then proposed that plaintiff's security clearance be permanently revoked, and he be discharged from employment with the NSA. *Id.* at 354. Although the court noted the plaintiff's Fourth Amendment claim was premised on the individual defendants' conduct following the suspension of his security clearance, plaintiff "essentially concede[d] that, to decide his Fourth Amendment claim on the merits, [the court] must determine whether the NSA wrongly suspended his SCI security clearance." *Id.* at 358. As *Egan* prohibits such a review, the court found there was no subject matter jurisdiction to consider the plaintiff's claims against the individual defendants. *Id.* at 359.

Defendants cite *Becerra v. Dalton* for the proposition courts cannot review predicate actions that lead to security clearance decisions. 94 F.3d 145 (4th Cir. 1996). Becerra was a civilian employee working for the Navy in the Office of Naval Intelligence. His security clearance was revoked based on information he claimed the Navy knew or should have known was false,

16

and he was ultimately discharged based on his lack of security clearance. The Fourth Circuit found the initiation of a security investigation is unreviewable under *Egan*, just as the denial of security clearance would be. *Id.* at 149.

The court finds *Reinbold* and *Becerra* to be instructive here. In particular, in order to determine whether the actions undertaken by Defendants were in retaliation for Plaintiff's invocation of rights under the FMLA and FLSA, the court would have to examine the conduct in light of the DOE's involvement as well. Indeed, Plaintiff has offered documents and testimony regarding the entire course of events, including the temporary suspension and eventual revocation of his HRP status and security clearance. The alleged retaliation is inextricably bound up with the DOE's oversight of HRP and its security clearance requirements.

Plaintiff argues his case is different because it is brought against a private employer and does not directly or indirectly challenge the determination of his security clearance. The court acknowledges Plaintiff has sued a private entity, Centerra, and several of its employees – not a governmental agency. The Ninth Circuit has found private employers can rarely utilize *Egan* to avoid lawsuits against them. *Zeinali v. Raytheon Co.*, 636 F.3d 544, 549-50 (9th Cir. 2011). In *Zeinali*, the plaintiff sued his employer, a private company that was not responsible for the agency's security clearance decision. Finding *Egan* and its progeny in the Ninth Circuit distinguishable, the court noted in each of those cases the plaintiff brought suit against the government agency responsible for the security clearance determination, and directly challenged the agency's decision to deny or revoke such clearance. *Id.* at 550. Zeinali's lawsuit, however, was brought against a private employer that would be "rarely responsible for (or even substantially

17

involved in) the government's security clearance decision." *Id.* The Ninth Circuit found jurisdiction only to decide claims that "do [ ] not necessarily require consideration of the merits of a security clearance decision," as long as they remain vigilant not to "question the motivation behind the decision to deny [the plaintiff's] security clearance." *Id.* at 550 (citing *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008)).

The Tenth Circuit, however, barred a lawsuit against a private employer, Boeing, that had authority delegated from the Air Force to grant or deny employees access to secured areas. *Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994). The court found Boeing's authority to make security decisions, delegated to it by the Air Force, meant the security decision made by Boeing should be treated the same as the decisions made by the Air Force: both "represent the exercise of authority delegated by the Executive Branch and are entitled to appropriate deference by the federal courts." *Id.* at 566. Therefore, the court determined it could not review Boeing's actions with regard to a particular employee's access to secured areas. *Id.*

In this case, employee discipline and oversight are delegated to Centerra, the private entity, with input and instruction from the DOE, who makes final HRP and security clearance decisions. Centerra is substantially involved in the DOE's HRP and security clearance decisions by providing information and opinions regarding employees' work performance and other qualities necessary to maintain HRP. Disciplinary actions undertaken by Centerra can be reviewed by the DOE and may impact employees, such as Plaintiff's, fitness to remain in HRP.

For example, when Plaintiff received corrective counseling from Centerra for his use of sick leave on October 6, 2018, the DOE HRP program manager asked multiple questions regarding

18

Plaintiff's fitness for reinstatement to HRP. This led to the Centerra HRP Management Official requesting an additional supplemental psychological evaluation by the DOE's Dr. Daniels, which occurred on December 5, 2018, and resulted in Plaintiff's HRP certification being revoked on March 4, 2019.  To determine whether such incidents of discipline were part of a pattern of harassing conduct towards Plaintiff, as he alleges, the court would have to consider whether the supplemental psychological evaluation and resulting revocation of HRP were appropriate.[5]  This it cannot do under *Egan* and its progeny.

## ii.  State Law Claims

Plaintiff alleges Defendants defamed Plaintiff by making false reports to the DOE concerning his trustworthiness and reliability.  ECF No. 1 at 14-15.  He further alleges "Defendants' conduct in disciplining him, demoting him, reducing his hours, and causing his security clearance to be revoked amount to defamation *per se* because such conduct leads others to believe that Plaintiff is unfit to participate in his profession." *Id.* at 15.  Finally, he alleges Defendants "intentionally or recklessly inflicted severe emotional distress upon Plaintiff as detailed above." *Id.* at 15-16.

The Magistrate Judge recommended Plaintiff's action "should be barred by Plaintiff's signed waiver and is a nonjusticiable challenge originating from the principles in *Egan* and its

---

[5] In addition, to prevail in his case, Plaintiff would have to show causation: *i.e.*, that the false information provided to the DOE, or the retaliation, caused the DOE's decision to revoke his security clearance.

progeny." ECF No. 57 at 19. In the event this court disagreed with those recommendations, but agreed with the recommendation that Plaintiff's FMLA and FLSA claims should be dismissed on the merits, the Magistrate Judge recommended this court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff objected to the application of *Egan*, arguing the Magistrate Judge "erred in concluding *Egan* bars Plaintiff's claims because Plaintiff does not directly or indirectly challenge the suspension of his security clearance." ECF No. 64 at 3.[6] Plaintiff did, however, support the portion of the recommendation that the court decline to exercise jurisdiction over his state law claims if his FMLA and FLSA claims were dismissed on the merits. ECF No. 73 at 2.

The court finds Plaintiff's state law claims cannot be adjudicated without an analysis of the DOE's security clearance determination. Plaintiff's allegations making up his defamation and intentional infliction of emotional distress claims are significantly bound up with the security clearance determination, as he alleges Defendants falsely represented him to the DOE, which led to the revocation of his HRP status. In the defamation claim, he directly alleges Defendants "caused his security clearance to be revoked." The court cannot analyze these state law claims without examining the DOE's supplemental psychological examination and security clearance revocation. *See Tweed v. Sessions*, No. 1:17-cv-01417-LMB-JFA, 2018 WL 3468367, at *9 (E.D. Va. July 18, 2018), *aff'd sub nom. Tweed v. Whitaker*, 745 F. App'x 499 (4th Cir. 2018) (holding

---

[6] Defendants assert Plaintiff did not make a specific objection to the recommendation to dismiss his state law claims under *Egan*. ECF No. 71 at 5 n.2.

the court lacked jurisdiction over claims that "necessarily involve the investigation and decision to revoke plaintiff's security clearance" when "all the alleged damage to plaintiff arises from the FBI's conduct during the investigation resulting in his security clearance being terminated and the resulting termination from employment, which conduct is barred from judicial review."). These are, therefore, non-justiciable claims.

### 5.  <u>Conclusion</u>

Accordingly, after reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, and the parties' objections and replies, the court agrees with the section of the Report regarding *Egan* as modified above, and therefore adopts and incorporates this portion of the Report in this Order.   Defendants' motion for summary judgment (ECF No. 34) is granted as the court is unable to resolve Plaintiff's claims without running afoul of *Egan* and its progeny.[7]  Plaintiff's claims are dismissed with prejudice.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
March 28, 2022

---

[7] The court need not examine the merits of Plaintiff's FMLA, FLSA, or state law claims, as they are non-justiciable under *Egan*.

21